UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ANTONIO SHANKLIN (#1196923),**

    **Petitioner,**

v.                                                                   **ACTION NO. 2:18cv143**

**HAROLD W. CLARKE,**
**Director of the Virginia Department of Corrections,**

    **Respondent.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, Antonio Shanklin ("Petitioner" or "Shanklin"), a Virginia state inmate, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). On March 19, 2007, the Circuit Court of Westmoreland County sentenced Petitioner to twenty-three years imprisonment for first degree murder, principal in the second degree and use of a firearm in committing a felony. The charges stem from a shooting committed by Travis Lucas. Shanklin assisted Lucas by retrieving a gun at Lucas' request. The habeas petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation. Because Shanklin's petition is time-barred and Shanklin has not stated any basis to toll the limitations period or excuse his untimely filing, the undersigned recommends that the Court dismiss the petition.

### I.    STATEMENT OF THE CASE

The Court of Appeals of Virginia summarized the facts found in Petitioner Antonio Shanklin's trial:

1

> At trial, the Commonwealth proved that on the night of July 5, 2006, Travis Lucas shot and killed Cleveland Smith outside the River Wood Apartments in Colonial Beach. Lucas and Smith were engaged in an argument near the River Wood Apartments that night. At one point, [Shanklin], who was Lucas' friend, got into his van and sped away. He returned in the van a few minutes later. [Shanklin] got out of the van, walked around the vehicle, and stated that he was not afraid of anybody. [Shanklin] struck the top of the vehicle with his hand. Lucas then went to the driver's side of the van, reached inside, and pulled out a gun. Lucas moved quickly toward Smith. Lucas drew the weapon and shot Smith five times. Lucas then fled the scene, and [Shanklin] drove away in the van.

Shanklin v. Commonwealth, No. 0612-07-2, slip op. at 1 (Va. Ct. App. Sept. 12, 2007).

Shanklin testified that during the argument with Smith, Lucas asked him to get an AK-47 rifle, which Shaklin thought would be used for Lucas to "protect himself" and "to make a statement." Trial Tr. at 170, Commonwealth v. Shanklin, No. CR06000324-00 (Va. Cir. Ct. Mar. 16, 2007). Shanklin left to get the rifle at a friend's home, but he did not take it because there was no ammunition for it. Trial Tr. at 170. Instead, he retrieved a handgun and returned to Lucas. Trial Tr. at 171. Michelle Haskins testified to witnessing Lucas pick up the handgun from the seat in Shanklin's van shortly after Shanklin returned to the scene. Trial Tr. at 45-48, 70. Angelo Newman, another witness at trial, also testified that Shanklin told him that he (Shanklin) brought the 9 mm handgun to the scene and left it on the seat of his van. Trial Tr. at 88-91.

The Circuit Court of Westmoreland County convicted Shanklin of first degree murder, principal in the second degree and use of a firearm in committing a felony. Pet. (ECF No. 1 at 1). The court sentenced him to twenty years imprisonment for the murder and three years imprisonment for the firearm charge. Id. The final judgement was entered on March 19, 2007. Id. Shanklin filed an appeal in the Court of Appeals of Virginia, which was denied on September 12, 2007. Id. at 2. The Supreme Court of Virginia refused his subsequent appeal on

April 30, 2009. Id. Shanklin then filed a state petition for a writ of habeas corpus on May 3, 2010, which was dismissed as untimely on March 7, 2011. Shanklin v. Diggs, No. CL10000058-00 (Va. Cir. Ct. Mar. 7, 2011). He did not appeal that dismissal, but on August 11, 2014, he filed a second state habeas petition, which was dismissed on procedural grounds on June 12, 2015. Shanklin v. Ponton, No. CL14000071-00 (Va. Cir. Ct. June 12, 2011). Shanklin appealed the dismissal of his second petition, but the Supreme Court of Virginia dismissed his appeal on March 17, 2016, for untimely filing of the appeal. Shanklin v. Ponton, No. 151903 (Va. Mar. 17, 2016).

Shanklin filed his current federal habeas petition under 28 U.S.C. § 2254 on February 6, 2018. (ECF No. 1). In his petition, Shanklin alleges multiple grounds for habeas relief:

(1) He is "actually innocent" and therefore his conviction is a miscarriage of justice;

(2) The Commonwealth violated his due process rights by not turning over exculpatory evidence;

(3) Five claims of ineffective assistance of counsel:

    a. Counsel's errors and misrepresentations caused procedural defaults in his state habeas proceedings that led to his petition being dismissed;

    b. Trial counsel failed to request a jury instruction that fit Petitioner's theory of the case;

    c. Trial counsel failed to present testimony of Travis Lucas and Cordel Morris;

    d. Trial counsel failed to object to certain jury instructions;

    e. Trial counsel failed to investigate charges against him.

Pet. (ECF No. 1 at 17-18).

Shanklin disputes the fact that he brought the same handgun that Lucas used to shoot Smith. Id. at 20. In support of his argument, Shanklin offers Lucas' testimony during Lucas' own trial, in which he stated that he was already in possession of the 9 mm gun and that Shanklin did not bring it to him. Id. at 21. Additionally, Shanklin offers the affidavit of Cordel Morris, who claims to have seen Lucas with a black handgun an hour before the shooting. (ECF No. 1, Exhibit H). Finally, he points to Terrance Price, who allegedly told Detective William Lewko that he had seen Lucas with a gun at a party several hours before the shooting. (ECF No. 1 at 23).

Respondent filed a Rule 5 Answer and Motion to Dismiss Shanklin's habeas petition (ECF No. 14) with an accompanying Brief in Support. (ECF No. 16). The filing included the required notice to pro se parties under Roseboro v. Garrison, 528 F. 2d 329, 329-30 (4th Cir. 1975). See Notice (ECF No. 17). Respondent argues that Shanklin's petition is time-barred and that no tolling exception applies. (ECF No. 16). Shanklin filed a Response to Respondent's Motion to Dismiss, (ECF No. 18), and the matter is therefore ripe for decision. As set out in detail below, this Report finds that Shanklin's federal habeas petition is time-barred and that he has not alleged any basis that would allow him to overcome the statute of limitations. Accordingly, it recommends the court grant Respondent's Motion to Dismiss and deny the petition as time-barred.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Shanklin's Habeas Corpus Petition is Time-Barred

Shanklin's habeas corpus petition is time-barred. In order for a federal court to review a state court ruling under a habeas corpus petition, the petitioner must file the habeas petition within a one-year statute of limitations period. 28 U.S.C. § 2244(d)(1). The one-year limitations

period begins on the date on which (A) the judgment becomes final; (B) the state-created impediment to filing a petition is removed; (C) the United States Supreme Court recognizes the right asserted; or (D) the claim's factual predicate could have been discovered through due diligence. § 2244(d)(1).

In Shanklin's case, the period began when his judgment became final. Shanklin started the state appeals process after being convicted on March 19, 2007. The Supreme Court of Virginia refused his last appeal on April 30, 2009. Shanklin then had ninety days to file for a writ of certiorari with the United States Supreme Court. Because he did not file a petition for a writ in that ninety-day period, his judgment became final on or around July 29, 2009, when he could no longer petition the United States Supreme Court. Therefore, the one-year limitations period began to run on that date.

Under 28 U.S.C. § 2244(d)(2), time during state post-conviction review does not count toward the one-year limitations period. The period is paused during any such actions. Trapp v. Spencer, 479 F.3d 53, 58-59 (1st Cir. 2007). In Shanklin's case, the federal limitations period paused on May 3, 2010, when he filed his first state petition with about eighty-seven days remaining (365 days, minus the 278 expired days). After the petition's dismissal on March 7, 2011, Shanklin had thirty days to file a habeas appeal to the Supreme Court of Virginia. That deadline passed on April 6, 2011, and the federal limitations period resumed. The federal limitations period expired eighty-seven days later on July 2, 2011. The federal limitations period may have paused when Shanklin filed his second state petition on August 11, 2014, but it had already expired by that point. See, e.g., Deville v. Johnson, No. 1:09CV72 (CMH/TRJ), 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010) (citing Webster v. Moore, 199 F.3d 1256, 1259 (11th

Cir. 2000) (holding that state habeas petition filed after limitations period expires does not toll the period because there is no period remaining to be tolled).

Shanklin did not file his federal habeas petition until February 6, 2018, over six and a half years after his federal limitations period expired. Thus, Shanklin's federal petition is time-barred. This court can only hear his habeas petition if he provides sufficient evidence to warrant equitable tolling or new, reliable evidence of actual innocence.

**B.   Shanklin Provided Insufficient Evidence to Warrant Equitable Tolling.**

Shanklin would be entitled to equitable tolling of the one-year federal limitations period only if he showed that he diligently pursued his rights and that extraordinary circumstances prevented him from filing on time. Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). He apparently alleges that his counsel falsely told him that his first state habeas petition was properly filed, and that the attorney's error caused his default of the claims by failing to timely present them to the Supreme Court of Virginia. (ECF No. 1 at 29-31). Shanklin relies on Martinez v. Ryan to argue that his counsel's error caused a procedural default, thereby entitling him to be excused from the default. 566 U.S. 1, 13 (2012).

Martinez permits a federal court to examine procedurally defaulted claims of ineffectiveness, but it does not excuse Shanklin's six-year delay in filing his federal petition. He did not diligently pursue his rights because he never filed an appeal for his first state petition, waited several years before filing his second state petition, untimely filed his state appeal for that petition, and waited almost nine years after his judgment before first seeking federal post-conviction relief. See McQuiggin v. Perkins, 569 U.S. 383, 391 (2013) (finding petitioner did not show diligence by waiting six years to seek federal habeas relief). Under these circumstances, Shanklin is not entitled to equitable tolling. Even if this court were to toll the

6

federal statute of limitations through his entire state petition process until the end of his second habeas appeal in March 2016, Shanklin would still be time-barred because he did not file his petition until February 2018 nearly two years later. Thus, equitable tolling does not allow Shanklin to overcome his untimely federal filing under any circumstances.

C. **Shanklin Provided Insufficient Evidence of Actual Innocence.**

A petitioner may still overcome a time-bar if the petitioner makes "a convincing showing of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). To make a successful actual innocence claim, the petitioner must present new, reliable evidence sufficient to convince the court that no reasonable juror could have found the petitioner guilty beyond a reasonable doubt. Id. (citing Schulp v. Delo, 513 U.S. 298, 329 (1995)). The delay in filing the petition should be considered as "a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." Id. at 386-87 (quoting Schlup, 513 U.S. at 332). The court may also consider how "the credibility of the affiants bears on the probable reliability of that evidence." Schlup, 513 U.S. at 332. Evidence which merely impeaches a government witness or adds support to a theory already presented at trial is insufficient to meet the actual innocence standard. See Calderon v. Thompson, 523 U.S. 538, 562-63 (1998).

It is not clear whether the additional evidence Shanklin offers qualifies as "new" because all of the evidence he describes existed at the time of Shanklin's trial but was not presented.[1] Whether the additional evidence should be considered "new" is immaterial, however, because even if it is new, the evidence does not persuade the court that no reasonable juror could have found Shanklin guilty beyond a reasonable doubt.

---

[1] The circuits take differing approaches over whether "new" evidence strictly means newly discovered evidence or evidence that merely was not presented at trial. Dick v. Muse, Civ. A. No. 3:10CV505, 2014 WL 4854689, at *2 n.3 (E.D. Va. Sept. 24, 2014); see also Lopez v. Miller, 915 F. Supp. 2d 373, 400 n.16 (E.D.N.Y. 2013) (citing examples of differing interpretations among the circuits).

7

First, Shanklin asserts that Travis Lucas, his codefendant, gave testimony at Lucas' own trial that supports Shanklin's actual innocence claim. Shanklin particularly relies on Lucas testifying to carrying on his person the 9 mm gun he killed Smith with, as opposed to receiving it from Shanklin. While Lucas' testimony might add weight to the theory that Shanklin did not provide the actual weapon used to kill Smith, it alone does not meet the high standard established in Schlup to show actual innocence. Multiple pieces of evidence from Shanklin's trial contradict Lucas' statement: Michelle Haskins, an eye-witness, testified that Lucas picked up the gun from the seat of Shanklin's van shortly after Shanklin pulled back into the driveway, Trial Tr. at 45-48, 70; Shanklin admitted to attempting but failing to retrieve a rifle for Lucas, Trial Tr. at 170; and Angelo Newman testified that Shanklin told him in jail that he brought the 9 mm gun to the apartment complex. Trial Tr. at 89-90.

Furthermore, Lucas' testimony is insufficiently reliable evidence. Evidence from codefendants should be skeptically examined, particularly when it is presented so many years after the event. See Clark v. Clarke, No. 7:14CV00042, 2017 WL 819500, at *4 (W.D. Va. Mar. 1, 2017). Shanklin stated concern during his own trial testimony that Lucas "might be vindictive" toward Shanklin because Shanklin testified against Lucas during his trial. Trial Tr. at 177-78. Moreover, because Lucas' testimony occurred during his own trial, this court must consider the possibility that at least some of his testimony was intended to fit his own defense theory of the case, and therefore must be viewed with suspicion.

A petitioner's actual innocence claim should not be dismissed "solely because the trial record contained sufficient evidence to support the jury's verdict." Schlup, 513 U.S. at 331. However, Lucas' testimony is not sufficient for the court to find that it is more likely than not that no reasonable juror would find Shanklin guilty in light of it.

Next, Shanklin cites Cordel Morris's affidavit to support his claim of actual innocence. (ECF No. 1, Exhibit H). In the affidavit, Morris claims that an hour before the shooting, Lucas gave him a black handgun to briefly hold for him. Shanklin uses this fact in the affidavit to support his theory he did not provide Lucas with the gun that Lucas used to kill Smith. However, this fact only places the gun in Lucas' possession an hour before the shooting.[2] Morris's affidavit does not eliminate the possibility that Shanklin provided Lucas the gun used to kill Smith because it does not account for where the gun was directly before the shooting. It also does not contradict or impeach the testimony of Michelle Haskins that Lucas retrieved the gun from the van driven by Shanklin, or Newman's testimony that Shanklin admitted retrieving the gun for Lucas. Accordingly, it is not sufficient to support Shanklin's actual innocence claim.

Finally, Shanklin supports his actual innocence claim by referencing the alleged statements Terrance Price made to an investigator about seeing Lucas with the gun. However, Shanklin failed to provide an affidavit from Price and cannot rely on what he claims Price would say during testimony. See Bomber v. Clarke, No. 7:16CV00171, 2017 WL 1031280, at *8 (W.D. Va. Mar. 15, 2017) (citing United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)) (dismissing petitioner's ineffective assistance claim because he did not provide affidavits from the witnesses he offered). Moreover, the only testimony attributed to Price is that he observed Lucas with 9 mm handgun at a party earlier in the evening. This is insufficient to demonstrate Shanklin's actual innocence for the same reasons which apply to the Cordel Morris affidavit.

Credible claims of actual innocence are rare, and the standard is difficult to meet. House v. Bell, 547 U.S. 518, 538 (2006). And the timing of Shanklin's claims coming eleven years after his trial significantly undermines his evidentiary challenges. McQuiggin, 569 U.S. at 399.

---

[2] This also assumes that the "black handgun" Morris described in his affidavit is the same 9 mm gun used to shoot Smith.

9

Because Shanklin has not shown sufficient evidence of actual innocence, his untimely federal habeas claims should be dismissed.

### III.  RECOMMENDATION

Shanklin's claims are time-barred and he has not presented sufficient evidence to overcome the late filing. Therefore, the undersigned recommends that Respondent's Rule 5 Answer and Motion to Dismiss (ECF Nos. 14, 15) be GRANTED and Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) be DENIED and DISMISSED WITH PREJUDICE.

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. §636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to mail a copy of this Order to the Petitioner and provide an electronic copy to counsel of record for the Respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 13, 2018

11

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to:

**Antonio Shanklin**
#1196923
Buckingham Correctional Center
1349 Correctional Center Road
Dillwyn, VA 23936

and an electronic copy provided to:

**Donald Eldridge Jeffrey, III**
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219

Fernando Galindo, Clerk

By: _____
Deputy Clerk

July 16, 2018